DECISION
Relator, Michael A. Ruddock, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for temporary total disability compensation, and to issue an order requiring the commission to grant such compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of facts and conclusions of law. (Attached as Appendix A.) The magistrate decided that the reports of Dr. O'Shea, on which the commission relied to deny temporary total disability compensation, were ambiguous and that a writ of mandamus should be issued to require the commission to enter a new order. Relator and respondent-employer, Cable Express, Inc., have both filed objections to the magistrate's decision.
In their objections, relator and respondent both argue that the reports of Dr. O'Shea are not ambiguous. Relator argued that Dr. O'Shea's reports clearly indicate he is entitled to temporary total disability compensation, respondent argues that the same reports are clearly some evidence that relator was able to return to light-duty work and that such work was offered to relator and refused.
Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. On November 2, 2000, Dr. O'Shea completed a C-84 form stating that relator was not able to return to his former position of employment and was not capable of performing any other employment. On the same day, Dr. O'Shea completed a transitional worksheet and stated relator was able to perform light-duty work with restrictions. Dr. O'Shea left blank the questions on the transitional worksheet that required information as to when relator could return to work or return to work with restrictions. On November 28, 2000, Dr. O'Shea issued a letter stating relator was unable to work and provided an estimated return-to-work date of December 19, 2000. As the magistrate correctly found, these reports were ambiguous and the commission, in its order, failed to clarify the ambiguity.
Therefore, we find relator's and respondent's objections to the magistrate's decision are not well-taken and are overruled. This court grants a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied relator's application for temporary total disability compensation and to issue a new order that either grants or denies the requested compensation, setting forth the evidence upon which the commission relies and providing an explanation for its decision.
Objections overruled, writ of mandamus granted.
PETREE and BROWN, JJ., concur.
 IN MANDAMUS
Relator, Michael A. Ruddock, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation and ordering the commission to issue an order finding that relator is entitled to the requested TTD compensation.
Findings of Fact:
1. Relator sustained a work-related injury on October 25, 2000, and his claim has been allowed for "sprain lumbar region."
2. On November 22, 2000, relator's treating physician, John J. O'Shea, M.D., completed a C-84 form. On that form, Dr. O'Shea indicated that relator was temporarily and totally disabled from October 25, 2000 through December 19, 2000, with an estimated return-to-work date of December 20, 2000. In response to the question of whether relator could return to his former position of employment, Dr. O'Shea indicated that he could not. Likewise, in response to the question of whether relator could return to other employment, including light duty, alternative work, modified or transitional work, Dr. O'Shea indicated that relator could not.
3. Also, on November 22, 2000, Dr. O'Shea completed a transitional worksheet generated by Health Strategies, Inc., which is apparently a claims management company utilized by the employer. The first three questions on the transitional worksheet ask when the worker can return to work with no restrictions, when the worker can return to work with the following restrictions and how long are the restrictions in effect. These questions were specifically left blank by Dr. O'Shea. In completing the form, Dr. O'Shea indicated that relator had the following restrictions: standing/walking one to three hours; sitting three to six hours; driving one to three hours; bending one to three hours; squatting one to three hours; climbing none; using hands to perform repetitive tasks six to eight hours; using feet to perform repetitive tasks one to three hours; lift arms above shoulders six to eight hours; use hands to perform nonrepetitive tasks six to eight hours; drive an automobile, truck or forklift one to three hours. The transitional worksheet also asks the physician to indicate whether the employee may perform sedentary work, light work, medium work, or heavy work. Dr. O'Shea circled "light work" which is defined on the form as exerting up to twenty pounds of force for up to three hours and/or up to ten pounds of force up to eight hours. Dr. O'Shea faxed this form to Health Strategies, Inc.
4. On November 22, 2000, the employer generated a letter from Alex L. Steininger, Vice President, Risk Management, notifying relator that it had received a release from relator's doctor indicating that relator could return to light duty work as of November 22, 2000. Mr. Steininger indicated to relator that the employer had light duty work available within the doctor's restrictions and requiring that relator respond in writing within seven days or it will be assumed that relator was voluntarily resigning.
5. Dr. O'Shea completed a form dated November 28, 2000, indicating that relator was under his care, was unable to return to work due to his back injury, and that it was estimated that he could return to light duty work on December 19, 2000, after he was evaluated at his next appointment on December 19, 2000.
6. Dr. O'Shea completed three more C-84 forms certifying relator as temporarily and totally disabled with an estimated return-to-work date of April 3, 2001.
7. On December 12, 2000, the Ohio Bureau of Workers' Compensation ("BWC") referred relator's claim to the commission for further consideration regarding relator's entitlement to TTD compensation based upon the following conflict in the evidence:
 This referral is based on medical from Dr. O'Shea where he released injured worker to return to light duty and C84 having him off thru 12-20-00 both signed by Dr. O'Shea on 11-22-00 and then new release to light duty of 11-28-00 where injured worker was released to light duty with estimated date of 12-19-00.
8. The matter was heard before a district hearing officer ("DHO") on January 8, 2001. Relator appeared at this hearing but was not represented by counsel. The DHO granted relator TTD compensation and gave the following rationale:
 The employer contends they tendered a good faith written job offer based on the medical restrictions dated 11/22/2000. Mr. Steininger testified he was informed by telephone by one of Dr. O'Shea's office staff that the 11/22/2000 release to light duty was a mistake.
 The District Hearing Officer finds the claimant was not released to light duty based on the C-84, also dated 11/22/2000, of Dr. O'Shea which clearly indicates no light duty and is corroborated by the 11/28/2000 medical restrictions.
 The District Hearing Officer orders Temporary Total Compensation paid from the date of last payment through 12/19/2000 based on the C-84 of Dr. O'Shea dated 11/22/2000. Temporary Total Compensation is ordered to be continued upon submission of competent medical evidence proving further entitlement for the recognized conditions in this claim.
9. Upon appeal of the employer, the matter was heard before a staff hearing officer ("SHO") on March 15, 2001. Neither relator nor an attorney representing him appeared at this hearing. The SHO vacated the prior DHO order and denied TTD compensation as follows:
 Temporary Total Compensation is denied for the period of 11/22/2000 onward. The claimant refused an offer of light duty work within his restrictions on or about 11/22/2000.
 This finding is based on the 11/22/2000 work restriction report of Dr. O'Shea; and the employer's letter to the file dated 11/28/2000.
 The claimant did not appear at today's hearing to clarify matters.
10. Further appeal filed by relator was refused by order of the commission mailed April 7, 2001.
11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
For the reasons that follow, this magistrate concludes that this court should issue a writ of mandamus.
On November 22, 2000, Dr. O'Shea completed a C-84 form wherein he indicated that relator was not capable of returning to his former position of employment and was not capable of performing other employment whether light duty, alternative work, modified work, or transitional work. Dr. O'Shea indicated that relator was temporarily and totally disabled from October 25, 2000, the date of the injury, through December 19, 2000, with an estimated return-to-work date of December 20, 2000.
On the same day, Dr. O'Shea completed a transitional worksheet for Health Strategies, Inc. On that form, Dr. O'Shea did not provide a date that relator could return to work nor did he provide a date when relator could return to work with restrictions. Dr. O'Shea gave his opinion as to what relator's restrictions were and then, when asked what the relator could perform, Dr. O'Shea circled "light work" which was defined by Health Strategies, Inc., as exerting up to twenty pounds of force up to three hours and/or up to ten pounds of force up to eight hours.
Thereafter, Dr. O'Shea issued a letter dated November 28, 2000, indicating that relator was unable to return to work and providing an estimated return-to-work date of December 19, 2000, after relator is reevaluated on December 18, 2000.
The above evidence provided by Dr. O'Shea is ambiguous. If the only evidence in the record were Dr. O'Shea's C-84s, then the only evidence in the file would indicate that relator was entitled to TTD compensation. However, the transitional worksheet completed by Dr. O'Shea renders his opinion ambiguous; however, the answers on the transitional worksheet do not constitute some evidence upon which the commission could rely in finding that Dr. O'Shea had definitively released relator to return to light-duty employment. Dr. O'Shea specifically left blank that portion of the worksheet where he was asked to indicate when relator could return to work with restrictions. In its order denying compensation, the commission does not address and resolve the obvious ambiguity in the record. Instead, the commission simply indicated that Dr. O'Shea had released relator to return to work with restrictions and that relator had refused an offer of suitable employment made by the employer. Because there is ambiguity in the record and because the commission's order does not address the ambiguity, this court should issue a limited writ of mandamus.
Based on the foregoing, it is this magistrate's decision that relator has demonstrated that the commission abused its discretion in denying its application for TTD compensation and this court should issue a limited writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for TTD compensation and to issue a new order either granting or denying the requested compensation after taking whatever means are necessary to address the ambiguity in the record.